**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **CRIMINAL ACTION** |
| | : | **NO. 18-161** |
| COREY HILARIO | : | |

## MEMORANDUM


SCHMEHL, J. */s/JLS*                                    FEBRUARY 1, 2021


### I.      INTRODUCTION

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure,

Defendant pled guilty to one count of possession of a mixture and substance containing

a detectable amount of cocaine and 28 grams or more, that is 59 grams, of a mixture

and substance containing a detectable amount of cocaine base ("crack"), with intent to

distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). As part of his guilty plea

agreement, Defendant reached an agreement with the United States that 96 months of

imprisonment was an appropriate sentence. This term of imprisonment was four years

below the low end of Defendant's federal guideline range. Presently before the Court is

the Defendant's pro se "motion for early home confinement pursuant to the recently

passed Care Act of 2020." Because only the Bureau of Prisons ("BOP"), and not the

Court, can designate an inmate for home confinement, the Court will construe the

motion as a motion for release to home confinement pursuant to the compassionate

release provision in 18 U.S.C. § 3582(c)(1)(A).[1] For the following reasons, the

Defendant's Motion is denied.

---

1  This Court does not have authority to grant a transfer to home confinement, or review the BOP's administrative

The Defendant is serving his sentence at FCI Allenwood Medium, with an anticipated release date of January 11, 2025. The Court is informed that Defendant has served approximately 31 months and has received credit for good conduct time of approximately four months, for total time served of approximately 35 months. He has not committed any disciplinary infraction during his time in custody. Defendant has exhausted his remedies by making a request for compassionate release to the warden at FCI-Allenwood, which was denied. (ECF 35. pp. 7-8.)

## II. LEGAL STANDARD

As a general rule, a district court may not modify a defendant's sentence after it has been imposed. 18 U.S.C. § 3582(c); see also *Dillon v. United States*, 560 U.S. 817, 825, (2010). However, the First Step Act provides for a compassionate release exception to that general rule, stating that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised **release** with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction;
> * * *

---

decision regarding that issue. See 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review). See also, e.g., *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3 (E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, No. CR 08-129, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020) (Kearney, J.); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

and that such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (stating that the court may

reduce a term of imprisonment if it finds, after consideration of the factors in § 3553(a),

that "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is

not a danger to the safety of any other person or to the community," and "[t]he reduction

is consistent with this policy statement"). Although neither U.S.S.G. § 1B1.13 nor

Congress defines the term "extraordinary and compelling," the Sentencing

Commission's commentary to § 1B1.13, provide guidance. See U.S.S.G. § 1B1.13 cmt.

n.1. The commentary provides that "extraordinary and compelling reasons" can include

(1) certain specified serious medical conditions (a terminal illness or a serious medical

condition "that substantially diminishes the ability of the defendant to provide self-care"

in prison and "from which he or she is not expected to recover"); (2) the defendant's

advancing age (over 65), in combination with a serious deterioration of his health and

his successful completion of at least 10 years or 75% of his sentence; (3) the

defendant's family circumstances, and (4) "[o]ther [r]easons ... [a]s determined by the

Director of the Bureau of Prisons" to be extraordinary and compelling, either alone or in

combination with the three prior reasons. U.S.S.G. § 1B1.13, cmt. n.1.

In *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020), our Court of Appeals

considered a compassionate release petition based on the existence of COVID-19 and

stated that it:

> [does] not mean to minimize the risks that COVID-19 poses in the
> federal prison system, particularly for [older inmates with pre-
> existing conditions]. But the mere existence of COVID-19 in society
> and the possibility that it may spread to a particular prison alone
> cannot independently justify compassionate release, especially
> considering BOP's statutory role, and its extensive and professional
> efforts to curtail the virus's spread.

*Id.* at 597 (citation omitted). Likewise, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit." *United States v. Roede*r, 807 Fed. Appx. 157, 161 n.16 (3d Cir. 2020).

## III. DISCUSSION

In his request to the warden for compassionate release/release to home confinement, Defendant stated that he suffers from respiratory asthmatic complications, congenital heart failure, high blood pressure, coronary complication, obesity, and pulmonary hypertension which he claims in combination with the presence of COVID - 19 at FCI Allenwood constitute extraordinary and compelling reasons for his release. The warden denied Defendant's request for compassionate release, finding that Defendant had not been diagnosed "with a terminal or debilitating medical condition," Defendant is not "disabled or unable to perform activities of daily living" and his condition "does not diminish [his] ability to function in a correctional environment." (ECF 35, p. 7.) In denying Defendant's request for home confinement, the warden noted that Defendant has a "current detainer with the Pennsylvania Board of Probation and Parole" and has served only 35.5% of his sentence. The warden further noted that Defendant "maintains[s] a Medium risk for recidivism and Medium security level. Inmates who have anything above a Minimum score are not receiving priority placement. Likewise, priority placement is given to inmates residing in Low and Minimum security facilities. Therefore, you are not a suitable candidate for home confinement." *Id.* As of January 4, 2021, there were 141 inmate and twenty-two (22) staff COVID-19 cases at FCI Allenwood-Medium. *See COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (select "Full breakdown and additional details" hyperlink and search for FCI Allenwood-Medium) (last accessed Jan. 4, 2021 7:17 a.m.).

The disturbing presence of COVID-19 at the prison, however, does not entitle every offender with a medical condition to compassionate release. See *Roeder*, 807 Fed.Appx. at 161 n.16. Rather, Defendant must establish that the risks to him, in light of his individual medical conditions and other circumstances, are so extraordinary and compelling that the Court should release him only 35 months into his 96-month sentence.

As an initial matter, the government informs the Court that Defendant's medical records for the past year reveal that Defendant has a body mass index of 32.2., which the government concedes qualifies as obese and places him at increased risk of severe illness from COVID-19. However, there is no medical evidence to support any of Defendant's other claimed ailments nor any evidence that Defendant has been prescribed any medication. To the contrary, Defendant's Presentence Report, to which Defendant did not object, reveals that Defendant indicated that he was "healthy, with no history of chronic illness or disease." PSR at ¶ 53. The Report also indicates that Defendant was using marijuana and cocaine on a daily basis at the time of his arrest. PSR at ¶ 54. Given Defendant's relative youth (33 years old) and his lack of other risk factors, his mild obesity does not constitute an extraordinary and compelling reason for his release.

With regard to the § 3553(a) factors, by possessing a mixture and substance containing a detectable amount of cocaine and 59  grams of a mixture and substance containing crack cocaine with intent to distribute, Defendant committed a very serious offense. The Country is currently undergoing a drug crisis and Defendant's actions demonstrate his willingness to further exacerbate this crisis by poisoning the community with cocaine and crack cocaine, all for personal gain. What is most troubling to the Court is that Defendant already has two prior state convictions for controlled substance

offenses and committed the current offense while on state parole. Obviously, his prior sentences have not been enough to deter him from engaging in criminal activity. Therefore, Defendant needs to serve a substantial period of his 96-month incarceration in order to deter the Defendant from continuing to engage in illegal drug activities as well  as to protect the public.

In sum, there is no evidence in this record from which the Court can conclude that Defendant's mild obesity places him at greater risk of contracting COVID-19 while incarcerated at FCI-Allenwood. We therefore simply cannot conclude that Defendant's mild obesity, together with the current conditions at FCI Allenwood, provide any extraordinary and compelling reason that warrants a sentence reduction at this time, particularly where Defendant is relatively young, has a significant criminal history, has thus far served only approximately 35.5% of his 96-month sentence and is a medium risk for recidivism.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the Defendant's Motion

for Release under 18 U.S.C. § 3582(c)(1)(A)(i).   An appropriate Order follows.